[901 NYS2d 57]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOUS-
TON DOUGLAS, Appellant.

Second Department, March 30, 2010

### APPEARANCES OF COUNSEL

*Houston Douglas*, pro se, and *Lynn W. L. Fahey*, New York City (*Joshua M. Levine* of counsel), for appellant.

*Charles J. Hynes*, District Attorney, Brooklyn (*Leonard Joblove* and *Seth M. Lieberman* of counsel), for respondent.

### OPINION OF THE COURT

FISHER, J.

The principal issue presented on this appeal is whether criminal conduct engaged in with a specific intent can also be found to have been reckless. We hold that it can, and that, under the circumstances of this case, the defendant's conviction of assault in the first degree (*see* Penal Law § 120.10 [3] [depraved indifference reckless assault]) should be upheld.

On September 26, 2003, at approximately 11:00 P.M., a commuter van with tinted windows was double-parked in an eastbound traffic lane of Parkside Avenue between Ocean Avenue and Parkside Court in Brooklyn. Kyron James was sitting in the van's front passenger seat. Karen Williams was also in the van, and her brother, Michael Williams, and son, Alvis Allen, were standing on the sidewalk nearby. The van's side passenger door was open.

The defendant drove up and began backing his vehicle into a parking spot near the van. As he did so, a wheel of his vehicle rolled over a glass bottle, shattering it. Several people, including Karen Williams, were hit by flying glass. Ms. Williams' brother and son confronted the defendant and demanded that he apolo-

gize. After a brief but heated exchange, the defendant got back into his car and drove eastbound to Parkside Court. He then turned his vehicle around and returned, stopping across the street from the van. He emerged from his vehicle with a gun and began running across the street. Ms. Williams, who by this time was outside the van, saw the defendant coming. Her brother and son quickly entered the van, and Ms. Williams slid the door closed behind them and yelled for the driver to pull away. The van began to move slowly as the defendant came around to its passenger side. When the defendant was still a few feet from the van, he fired a shot toward it, striking Kyron James, who was still in the front passenger seat and who had not taken part in the earlier dispute. James sustained serious physical injury. The defendant continued running toward the van. He pointed the gun through an open window and fired two more shots, but did not hit anyone. He then turned and pointed the gun at Ms. Williams, who was crouched in the street. A police officer arrived at the scene and ordered the defendant to stop. The defendant ran across the street, got back into his vehicle and drove away. He was apprehended after a brief chase.

The defendant was subsequently charged, inter alia, with two counts of assault in the first degree (Penal Law § 120.10 [1], [3]). One count alleged that he intended to cause serious physical injury to Kyron James and did so by means of a deadly weapon. The other alleged that, under circumstances evincing a depraved indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of death to Kyron James and thereby caused him to suffer serious physical injury. After both sides rested, the court granted the prosecutor's motion to dismiss the count charging intentional assault. The jury convicted the defendant, inter alia, of depraved indifference reckless assault.

■ On appeal, the defendant contends that the evidence established that his conduct was manifestly intentional and directed only at Michael Williams and Alvis Allen. The defendant maintains that, therefore, although the evidence might well have supported a conviction of *intentional* assault with respect to Kyron James under a theory of transferred intent, it does not support a conviction for a *reckless* assault of James. We conclude that the defendant's contention is not preserved for appellate review and is, in any event, without merit.

> "[W]hether a criminal act is intentional or reckless depends upon the relationship between the perpetra-

tor's objective in committing the act and the result the act produces . . . . Thus, for an intentional crime, the perpetrator must engage in conduct with the conscious objective and purpose of causing a particular unlawful result. For a reckless crime, the perpetrator does not act with the conscious objective of causing the unlawful result, but must engage in conduct that creates a substantial and unjustifiable risk that the unlawful result will occur. The reckless perpetrator is aware of the risk but consciously disregards it and engages in the conduct anyhow, thereby deviating grossly from the standard of conduct that a reasonable person would observe in the situation" (*People v Atkinson*, 21 AD3d 145, 148 [2005], *mod* 7 NY3d 765 [2006]).

Ordinarily, a defendant cannot be guilty of both the intentional and reckless assault of the same individual because a defendant cannot intend to cause serious physical injury to a person and at the same time consciously disregard a risk that he or she will succeed in doing so (*see People v Baker*, 14 NY3d 266, 271 [2010]; *People v Gallagher*, 69 NY2d 525, 529 [1987]; *see also People v Gonzalez*, 1 NY3d 464, 467 [2004]; *People v Hafeez*, 100 NY2d 253 [2003]). The rule, however, does not apply where the defendant does not harbor an intent to injure the victim but the crime is deemed intentional by operation of law under a theory of transferred intent.

The statute defining intentional first degree assault provides: "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person *or to a third person* by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1] [emphasis supplied]). The statute defining depraved indifference reckless assault provides: "A person is guilty of assault in the first degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person" (Penal Law § 120.10 [3]). Thus, if a defendant intends to cause serious physical injury to one person, but instead causes such injury to a different person by means of a deadly weapon or dangerous instrument, the crime fits the definition of an intentional first degree assault even though the defendant intended no harm to the person actually injured. By the

same token, however, if, under circumstances evincing a depraved indifference to human life, the defendant's efforts to injure the intended victim create a substantial, unjustifiable, and grave risk of death to a different person, and the defendant is aware of the risk but consciously disregards it and engages in the conduct anyhow, deviating grossly from the standard of conduct that a reasonable person would observe in the situation, and the defendant thereby causes serious physical injury to that other person, the act constitutes a reckless first degree assault as well (*see People v Hamilton*, 52 AD3d 227, 228 [2008]; *People v Monserate*, 256 AD2d 15, 16 [1998]; *cf. People v Page*, 63 AD3d 506, 508 [2009]). Thus, a defendant may act with a specific intent directed at one person, while at the same time being reckless with respect to a different person. We reject the defendant's argument that upholding convictions for reckless crimes in such circumstances would completely erode the doctrine of transferred intent, as there are many situations in which criminal liability rests on transferred intent in the absence of recklessness (*see e.g. People v Powell*, 304 AD2d 410 [2003] [wrong person killed in a murder-for-hire scheme where shooter mistook actual victim for intended victim]).

Here, we agree with the defendant that the evidence is manifest that he acted with the specific intent to kill or seriously injure the two men, Michael Williams and Alvis Allen, with whom he had argued earlier, and that he harbored no intent to harm the actual victim, Kyron James, who had not participated in the dispute. Nevertheless, in pursuing his specific intent to kill or injure Williams and Allen by firing a gun repeatedly at and into an occupied commuter van, the defendant created a substantial, unjustifiable, and grave risk of death to other occupants of the van, including Mr. James. Moreover, in our view, such conduct was not only reckless with respect to the occupants of the van but also, under the circumstances, evinced the same sort of depraved indifference to human life as would an act of firing a gun into a crowd (*see People v Feingold*, 7 NY3d 288, 293 [2006]; *People v Payne*, 3 NY3d 266, 272 [2004]; *People v Nikc*, 52 AD3d 740 [2008]). Accordingly, regardless of the fact that the evidence would have sustained a conviction of intentional assault under a theory of transferred intent, it was also legally sufficient to support the defendant's conviction of depraved indifference reckless assault.

■ In pronouncing sentence on the assault and weapon possession counts, the Supreme Court erred in failing to impose

statutorily required periods of postrelease supervision. The error, however, may be remedied through resentencing (*see People v Sparber*, 10 NY3d 457 [2008]; *People v Hernandez*, 55 AD3d 849, 850 [2008]). Therefore, the judgment is modified, on the law, by vacating the sentence imposed; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for resentencing that properly includes periods of postrelease supervision as part of the sentence.

The defendant's remaining contentions are without merit.

MASTRO, J.P., ANGIOLILLO and LEVENTHAL, JJ., concur.

Ordered that the judgment is modified, on the law, by vacating the sentence imposed; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for resentencing that properly includes periods of postrelease supervision as part of the sentence.